## KNOX et al. v. RICHARDS et al.

1. A ground of a motion for a new trial, alleging error in a ruling by
the court, can not be considered here unless verified by the judge.
2. Mere declarations of one in a dying condition, to the effect that he
wanted his property to go to a designated person and wished those
present "to see to it," if made solely for the purpose of having a

written will prepared and not with the intent or design that the
words spoken should themselves operate as a testamentary disposi-
tion of the decedent's property, do not constitute a nuncupative will..
3. The evidence in this case was not sufficient to warrant a finding that
the decedent had made a valid nuncupative will, and the court erred
therefore in not granting a new trial.

Argued February 2, — Decided February 27, 1900.

Probate of will—appeal.   Before Judge Smith.   Washing-
ton superior court.   March term, 1899.

*Evans & Evans,* for plaintiffs in error.
*Rawlings & Hardwick,* contra.

LEWIS, J.   Quintus Richards filed a petition before the court
of ordinary of Washington county, to probate an alleged nun-
cupative will of Amos Perry, deceased.   To this application a
caveat was filed by the heirs of Amos Perry, to wit, Maria
Knox, Mitt Birdsong, and Anna Sikes, his sisters.   The case
came up for trial before the superior court of Washington
county, on an appeal by the caveators from the judgment of the·
ordinary setting up the will.   A verdict was rendered for the
propounder; whereupon caveators made a motion for a new trial,.
and now except to the judgment of the court below overruling
their motion.

1.   One ground in the motion for a new trial is: "Because
the court erred in ruling out the evidence as to the bad character
of the propounder, Mary Lizzie Golden."   As to this ground
the judge certifies as follows:   "The first ground of the amend-
ed motion I can not certify to, for the reason that I can not re-
member about this ruling."   The judge having refused to cer-
tify this ground in the motion, of course it can not be further
considered by this court.

2, 3.   The only other grounds in the motion for a new trial
are the general ones, that the verdict is contrary to law and
evidence.   The following is, in substance, the testimony relied
upon by the propounder for setting up the nuncupative will:
Quintus Richards, the propounder, testified, in effect, that he
received a message from the alleged testator, Amos Perry, on
November 24, 1898, to go down to his house and write his will;
that he went down immediately.   It seems that Perry was·

suffering from a dangerous wound. He was rational when Richards got to him, and told witness that he wanted him to write his will; whereupon witness asked him to whom he desired to leave his property, and he said, Mary Lizzie Golden. At that time witness did not know who she was, but thought she was Perry's sister. Perry said he desired to leave all his property to her. Witness asked those standing near him to give him a schedule of Perry's property, and stepped out of the room, and made up a list of things that he had, with the assistance of those present. Witness then went back into the room, and read the list over to Perry, who said that it was all right; that he wanted to leave it all to Mary Lizzie Golden, and that he wanted witness to see to it for him. The witness, not having his form book there, nor pen and ink, went back to his office, prepared the will, named himself as executor, as he thought that was what the testator meant when he said, "I want you to see after it," and, in about half an hour, went back to Perry's house to have him sign the will, which had been prepared, but Perry was dying, and unable to sign it, and died a few minutes afterwards. Witness did not hear him call upon anybody present to bear witness that he was making a will in those words. He got the schedule from others, because he thought Perry too weak to give it to him himself. There were several other witnesses sworn for the propounder, who testified in effect that they were present when Richards came in the room with a list of the property, and heard him read it over to Perry, and that Perry remarked it was all right, and they heard Perry say he wanted Mary Lizzie Golden to have all his property. None of the witnesses testified that they heard Amos Perry call upon any one present to bear witness that he was making a will.

There is no clear or positive testimony that Perry said anything at all, or that he was even conscious after Richards had gotten back to his house with the will prepared for execution. Richards does say, in one portion of his testimony: "He said at that time that he wanted Mary Lizzie Golden to have all his property." It is possible, from the connection in which this statement appears in the brief of evidence, that it referred to the time when he came to the room of Perry after he had written

his will. We think, however, it relates to the first time that he came, when he read over the list of property that he had obtained from others. However this may be, there was no other witness who says anything indicating they heard Perry make any remark whatever about his property after Richards had retired to write his will. From the entire evidence, then, the conclusion is irresistible that the words of the deceased, which were undertaken by the propounder to be set up as a nuncupative will, were not intended as such a will by the speaker when he uttered them. On the contrary, he was simply giving direction about what he desired embraced in the written will that he purposed executing. The object of Richards's visit there was to write his will, and the purpose of the remarks made by Perry was to inform him how he wanted it written. We do not think a legal nuncupative will can be made in such a manner. In the first place, there is an absolute want of any intention to make such a will. In the next place, no words were used calling upon any one to witness what was said as a verbal will. Section 3349 of the Civil Code declares: "No nuncupative will shall be good that is not proved by the oaths of at least three competent witnesses that were present at the making thereof, nor unless it be proved that the testator, at the time of pronouncing the same, did bid the persons present, or some of them, bear witness that such was his will, or to that effect," etc. The fact that a person intends to make a written will, declares this purpose in the presence of others, and states what disposition he desires made of his property, can not be construed into a nuncupative will simply because he happens to die before the paper has been prepared in accordance with his request. This court has decided in *Stamper* v. *Hooks*, 22 *Ga.* 603: "A written will that is signed by the maker of it, can not be set up as a nuncupative will." It appeared in that case that the propounders offered to show that Robert S. Hooks, during his last illness, in his own house, in the presence of three witnesses, who proved the same before the ordinary, made his will; that at the time of making it the testator called upon them to take notice and bear witness that the words then and there spoken, and contained in the writing which was signed by Hooks, contained the disposi-

tion made of his property after his death; that he was at the time conscious of approaching dissolution. It appears that no witness attested this writing; and it was held that the fact that he, in a dying condition, called upon three persons to bear witness to it, did not make it effective as a nuncupative will. See also *Sampson* v. *Browning, 22 Ga.* 293.

In 16 Am. & Eng. Enc. L. 1015, these principles are announced touching the requisites of a nuncupative will: "A will reduced to writing and signed by the testator, or a memorandum for instructions for making a will, can not be treated as a nuncupative will; nor is a written will, drawn up by an attorney, but not signed, owing to sickness of the testator, to be treated as a nuncupative will." In Hebden's case, 20 N. J. Eq. 473, it was held: "A will drawn by an attorney, a few hours before the testator's death, pursuant to his instructions, but its execution postponed till he should feel stronger, though he asserted that his will was as it had been drawn, will not be admitted to probate as a nuncupative will. It is essential to a nuncupative will that it be only a verbal declaration of the testator's wishes made in the presence of witnesses called upon by him to bear witness that such is his will." In Dockum *v.* Robinson, 26 N. H. 372, it was held: "Verbal directions and instructions for drawing up a written will do not constitute a nuncupative will, although spoken in the presence of the proper number of witnesses requested to bear witness thereto, and reduced to writing and offered for probate according to the statute." In Lucas *v.* Goff, 33 Miss. 630, it appears that the deceased was informed by his attending physician of his dangerous condition, and was asked if he had made any disposition of his property; to which he replied, that it was too late, that he was unable to make a written will, but that he desired F. H. to have all of his property, and that he wanted some good person to take charge of it for her, so that she might be benefited by it, but that he was afraid it would not be done, and that his property would fall in the hands of some person who would destroy it. It was held that these words did not constitute a nuncupative will.

Applying the above principles of law to the facts in this case, we are forced to the conclusion that the evidence failed to make

out a case in favor of the propounder, and the judgment below,. refusing a new trial, is accordingly

> *Reversed.    All the Justices concurring.*